Mr. Ken Milburn, Jr., Chair Arkansas Tobacco Control Board 101 E. Capitol, Suite 110 Little Rock, Arkansas 72203-3490
Dear Chairman Milburn:
You have requested an Attorney General opinion on the following questions:
 (1) Is it a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a paper coupon?
 (2) Is it a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a buydown or "paperless coupon"?
RESPONSE
Question 1 — Is it a violation of the Unfair Cigarette Sales Act for aretailer to sell tobacco products to a consumer, where the consumerpays, out of his own pocket, less than the minimum price, due to the useof a paper coupon?
I am unable to give a general answer to this question, because, as explained more fully below, the answer can be affected by so many variable facts. An adequate response is also made difficult by the fact that certain key phrases in the Unfair Cigarette Sales Act have not been defined statutorily nor interpreted judicially. Therefore in lieu of a specific response, I will discuss the issues that must be considered in determining whether a particular fact situation violates the Act.
The primary prohibitions of the Unfair Cigarette Sales Act (which is codified at A.C.A. § 4-75-701 et seq.) are stated as follows:
 (a) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to advertise, offer to sell, or sell, at retail or wholesale, cigarettes at less than cost to the wholesaler or retailer, as the case may be.
 (b) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes.
 (c)(1) It shall be unlawful for any retail dealer to induce or attempt to induce or to procure or attempt to procure the purchase of cigarettes at a price less than cost to wholesaler.
 (2) It shall be unlawful for any retail dealer to induce or attempt to induce or to procure or attempt to procure any rebate or concession of any kind or nature whatsoever in connection with the purchase of cigarettes.
A.C.A. § 4-75-708.
The Act also specifically addresses the use of coupons in a sales transaction. With regard to this issue, the Act states in pertinent part:
 [I]n all advertisements, offers for sale, or sales involving the giving of any gift or concession of any kind, whether coupons or otherwise, the wholesaler's or retailer's combined selling price shall not be below the cost to the wholesaler or the cost to the retailer, respectively, of the total of all articles, products, commodities, gifts, and concessions included in the transactions. . . .
A.C.A. § 4-75-709.
When the transaction that you have described is considered in light of these prohibitions, several questions of fact arise. Among these is the question of whether the sales price in the described transaction is less than the cost to the retailer in question. The term "cost to the retailer" is defined in the Act to mean "the basic cost of the cigarettes involved to the retailer plus the cost of doing business by the retailer as evidenced by the standards and methods of accounting regularly employed by him and must include, without limitation, labor including salaries of executives and officers, rent, depreciation, selling costs, maintenance of equipment, delivery costs, all types of licenses, taxes, insurance, and advertising." A.C.A. § 4-75-702(12)(A). The Act goes on to state: "In the absence of proof of a lesser or higher cost of doing business by the retailer making the sale, the cost of doing business by the retailer shall be presumed to be six percent (6%) of the basic cost of cigarettes to the retailer." A.C.A. § 4-75-702(12)(B). Determinations of the "cost to the retailer" and of "the cost of doing business by the retailer" are both determinations of fact that will vary from case to case because of the numerous retailer-specific factors that must go into the calculation. Moreover, the Act allows for the introduction of other factual information to establish a cost of doing business other than the presumed cost. For these reasons, the price issue is intensely factual.
Even assuming that your question presumes that the sales price in the transaction you described was, in fact, below the total cost to the retailer, including the concession allowed by the coupon, another question of fact that arises out of the language of the prohibitions is the question of the retailer's intent. The Act prohibits sales below cost that are conducted "with the intent to injure competitors or destroy or substantially lessen competition." See A.C.A. § 4-75-708. The issue of intent is clearly a question of fact — although the Act does create a presumption of intent. It states:
 Evidence of advertisement, offering to sell, or sale of cigarettes by any wholesaler or retailer at less than cost to him, or evidence of any offer of a rebate in price or the giving of a rebate in price or an offer of a concession or the giving of a concession of any kind or nature whatsoever in connection with the sale of cigarettes, or the inducing or attempt to induce or the procuring or the attempt to procure the purchase of cigarettes at a price less than cost to the wholesaler or the retailer shall be prima facie evidence of intent to injure competitors and destroy or substantially lessen competition.
A.C.A. § 4-75-708.
This presumption can, however, be rebutted with factual evidence to the contrary.
In connection with this issue, it must be noted that the Act excepts certain transactions from it prohibitions. More specifically, the Act states:
 The provisions of this subchapter shall not apply to a sale at wholesale or a sale at retail made:
 (1) In an isolated transaction and not in the usual course of business;
 (2) Where cigarettes are advertised, offered for sale, or sold in a bona fide clearance sale for the purpose of discontinuing trade in such cigarettes and the advertising, offer to sell, or sale shall state the reason therefor and the quantity of such cigarettes advertised, offered for sale, or to be sold;
 (3) Where cigarettes are advertised, offered for sale, or sold as imperfect or damaged, and the advertising, offer to sell, or sale shall state the reason therefor and the quantity of the cigarettes advertised, offered for sale, or to be sold;
 (4) Where cigarettes are sold upon the final liquidation of a business; or
 (5) Where cigarettes are advertised, offered for sale, or sold by any fiduciary or other officer acting under the order or direction of any court.
A.C.A. § 4-75-703.
In order to determine whether a given transaction violates the Act, a determination must be made — as a factual matter — as to whether the transaction falls within any of the exceptions quoted above. Again, such a factual determination will vary from case to case.
If it is factually determined that the transaction in question does not fall within the statutory exceptions, certain language of the Arkansas Supreme Court in McClane Co. v. Weiss, 332 Ark. 284, 965 S.W.2d 109
(1998), must be considered. In that case the court stated:
 The Act does not make all below-cost sales of cigarettes unlawful, but instead exempts (1) isolated transactions not made in the usual course of business, (2) clearance sales for discontinued items, (3) sales of imperfect or damaged items, (4) sales related to the liquidation of a business, or (5) sales made by a fiduciary acting under the order or direction of a court. See § 4-75-703(1)-(5). In addition, § 4-75-704
exempts sales below cost made to meet a competitor's prices. . . . [O]nce the foregoing exempted sales are removed from consideration, it is rational to conclude that it is more likely than not that other below-cost sales are made for improper purposes.
McClane Co. v. Weiss, 332 Ark. 284, 297, 965 S.W.2d 109 (1998).
The above-quoted language by the court has the effect of buttressing the presumption of intent discussed above. However, it also leaves room for factually-based rebuttals of the presumption. The fact that it does so bolsters my conclusion that the question of whether the Act has been violated turns primarily on questions of fact that can vary from case to case.
To summarize, the Unfair Cigarette Sales Act gives rise to various questions of fact. Among those are questions related to the sales price in light of the retailer's particular circumstances, the retailer's intent, and whether the transaction in question factually falls within the list of transactions that are exempted from the Act. In order to determine whether any given transaction violates the Act, its particular factual circumstances must be evaluated.
Question 2 — Is it a violation of the Unfair Cigarette Sales Act for aretailer to sell tobacco products to a consumer, where the consumerpays, out of his own pocket, less than the minimum price, due to the useof a buydown or "paperless coupon"?
It is my opinion that whether a "concession" that is made in a cigarette sales transaction takes the form of a paper coupon or a paperless coupon is immaterial to the issue of whether the transaction violates the Unfair Cigarette Sales Act. The Act provides broadly that evidence of a "concession of any kind or nature whatsoever in connection with the sale of cigarettes" will give rise to a presumption of violation.
Accordingly, it is my opinion that the principles discussed in response to Question 1 will also be applicable to this question.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh